CLARK HOLLENBACK

V.

DAVIDSON TODD ET AL.

</div>

BAILMENT—RIGHT OF ACTION FOR POSSESSION.—As against a wrong-
doer or trespasser, the bailee, or the one having possession of personal prop-
erty, has a right of action to recover either in trover or trespass, in case he is
disturbed in or deprived of possession.   As between such bailee and a mere
wrongdoer, the former is the owner and has title to it.

APPEAL from the Circuit Court of Kendall county; the Hon. C. W. UPTON, Judge, presiding. Opinion filed April 5, 1886.

Messrs. FOWLER BROS. and Mr. A. E. SEARLES, for appellant.

Mr. A. J. HOPKINS, Mr. N. J. ALDRICH and Mr. F. H. THATCHER, for appellee.

LACEY, P. J. On the 14th day of October, 1881, the appellant commenced a suit in attachment against Davidson Todd and Thomas J. Terrell, in the Circuit Court of Kendall county, and the attachment writ was levied on between eight and nine thousand bushels of corn as the property of Todd & Terrell in the elevator at Millbrook in said county. Todd & Terrell gave a forthcoming bond, and subsequently the appellee herein, Jacob S. Budd, filed a plea of interpleader claiming to be the owner of the property in question so attached. Upon this plea issue was joined and a trial had before a jury, which resulted in a verdict in favor of appellee. Motion for new trial was overruled and judgment rendered against the appellants for costs, from which judgment an appeal is taken to this court.

The warehouse and elevator belonged to the father of appellee, Jacob Budd, and he had rented the house to Todd & Terrell. The latter had operated it for some time as a warehouse, buying and storing grain. The appellee, among others, had stored a quantity of grain with Todd & Terrell, and it had been shipped out by them. Todd & Terrell failed prior to the 1st day of September, 1881, and could procure no more money to purchase grain or pay for that which they had contracted for, and being in debt to Jacob Budd to considerable amount, and Jacob Budd being their security in Chicago to Wanzer & Co., procured his son, Jacob S. Budd, the appellee, to take possession of the warehouse and to purchase the contracts for grain that Todd & Terrell had with different farmers, to the number of seventeen, which by a written agreement was for value received, assigned and transferred by

Todd & Terrell to the appellee, on the 10th day of September, 1881, he having taken possession of the warehouse on the first day of said month.   Terrell continued in the warehouse for appellee on wages.

Prior to the commencement of this suit the appellants demanded the corn of Todd & Terrell he had stored with them, also demanded it of appellee as well as of his father. The corn which was levied on was corn that appellee had taken partly under the contracts so purchased and partly that which he had purchased independently of farmers and which he had in store.   Appellee was a young unmarried man about twenty-two years of age and resided with his father and had been engaged in farming. ' He had no considerable means of his own and it did not require any to purchase out Todd & Terrell for they had no corn in the warehouse at the time appellee took possession.   The warehouse and elevator belonged to his father and his father, loaned him $500 to begin business with and the balance of the money to purchase the grain with ; prior to the attachment he borrowed of his commission merchants, Tomblin & Co., of Chicago.   None of the corn called for by the contracts had been paid for by Todd & Terrell, nor any portion of it.   The only possible advantage that appellee could have had on account of the contracts was that he had so much corn secured, and any advance in the price of the corn above the contract price at the time of delivery.

The main cause for error insisted on for reversal is that the court refused the appellant's instructions Nos. 5, 7, 8, 9 and 10 "refused," which go to the point of telling the jury that if the property in question was the property of Jacob Budd and not appellant, the verdict should be for appellant.   It is in- sisted that the property was really the property of Jacob Budd, and that his son's name was only used nominally and that he had no real interest in it.   The substance of the fifth refused instruction is given in the appellant's first and third "given" instructions, except that the jury are told that in determining whether the purchase of the corn was *bona fide* * * * the jury had a right to consider the objects and purposes of the

Hollenback v. Todd.

sale, whether fraudulent or not, whether for the purpose of hindering and delaying the creditors of Todd & Terrell, etc.

On reading this instruction it will be observed that the jury are told by it that they must consider *as a fact* and as a part of the circumstances, "the objects and purposes for which the sale was made, whether fraudulent or not, and whether or not for the purpose of hindering or delaying the creditors of Todd & Terrell from collecting their claims at that time," etc. These were not evidentiary facts, and their existence could only be arrived at after a consideration of all the evidence and circumstances; hence it would be misleading and confusing to the jury to instruct them to look upon the ultimate conclusions to the jury to be determined from the evidence as facts *in evidence*. It in a measure assumes that the sale was fraudulent and made for the purpose of hindering and delaying creditors.

The point in the instruction that the jury could go behind the written assignment is covered in substance in "given" instructions 1 and 3; and it was not important that the jury should be to'd in express language that they could do so, having been so told in substance. The *proper* portions of the 7th and 8th instructions "refused" were given in the 3d. The 8th, as a whole, was erroneous in assuming that the "Budds" purchased the corn in question. This was a disputed fact, the appellee sharply contending that he alone purchased it. The instruction offered by appellant and refused by the court is to the effect that if the "real transaction was for the benefit of Jacob Budd," and he, in fact, was the one "interested in such purchase," was the owner of the effects and property in question, "although the proofs may show that the same was made to Jacob S. Budd, nominally, from Todd & Terrell, then the jury should find that the property in question was not the property of Jacob S. Budd."

This instruction raises the point that seems to be chiefly, if not entirely, relied on to reverse the judgment of the court below. We do not think the instruction was proper, or the law governing the case as presented to the jury. Appellee, by interpleader, claimed the property as his own, and we think

against a party like the appellant, who had no claim or right to it whatever in case appellee's contract with Todd & Terrell was *bona fide*, the proof that he was the bailee and had the entire control and possession of it, and had borrowed money in his own name to purchase it, was sufficient upon which to base a recovery, and his plea of property in himself was made out.

As against a wrongdoer or trespasser the bailee, or the one having possession of personal property, has a right of action to recover either in trover or trespass in case he is disturbed in or deprived of possession. As between such bailee and a mere wrongdoer the former is the owner and has title to it. What matter is it to the appellant whether appellee had a perfect title to this corn or not, as between himself and father? The appellant certainly had no claim to it unless through Todd & Terrell.

The appellant's writ of attachment ran against Todd & Terrell and not against appellee or his father, Jacob Budd. The property was found in the peaceable and undisturbed possession of appellee, and levied upon as the property of Todd & Terrell. There might have been a right of action in favor of appellee in trespass against the sheriff for this levy, and in such case the sheriff could not have been permitted to set up such defense as is attempted here. The possession of appellee would have been all he need have shown, and his title could not have been attacked. But instead of resorting to his action of trespass he seeks his rights under the statute by filing his interpleader claiming the property, and if the property is found by the jury not to be that of Todd & Terrell, it must be restored to the appellee, who was the bailee, at least, if not the absolute owner. We see no merit in equity or law in such claim as is set up by this instruction, and it was properly refused. The tenth refused instruction is bad, because it assumes that the "two Budds" had an interest in the assigned contracts, and the court need not give it, for it would have been simply a repetition of Nos. 1 and 3 already given.

It is also objected that the question as to whether or not

appellee had ever taken possession of the property was ignored in appellee's instructions. This it is insisted was error.

We think that there was no error in this, for the reason that his having taken possession of the warehouse and elevator, and his having succeeded Todd & Terrell in the business, and of his claiming to buy corn on his own account, was notorious—known to nearly every one, and to none better than appellant himself, who was expressly notified of it before his attachment was issued. So no harm could be done in assuming that appellee had actual possession before the attachment writ was issued.

It is finally claimed that the verdict is against the weight of the evidence on the vital point as to the good faith of the purchase of the contracts from Todd & Terrell, that is, whether it was done for the purpose of hindering and delaying their creditors. We can not but think, after reading the evidence, that there are slim grounds for such claim.

It will be observed that no corn whatever, nor other grain, was purchased by appellee of Todd & Terrell. The latter were hopelessly insolvent, had nothing, and could get no more money in Chicago of commission merchants. They were heavily indebted to Jacob Budd, the owner of the warehouse and elevator, and he was security for them for other sums. Todd & Terrell had no avail except certain executory contracts for the purchase of corn, to be paid for on delivery—which might be worth something or nothing as the price of corn advanced or declined. They could not get the corn unless they had money to pay for it. If the transfer was made for the ultimate benefit of Jacob Budd, as is claimed by appellant with considerable force, it must have been done by Budd to save himself and to keep the warehouse property from depreciating, and not to defraud any one. Then, appellee furnished every dollar of the money that paid for the corn on his own credit; would a man naturally enter into such a transaction as this and consent to act as a cover for mere friendship? Involve himself in debt to the amount of thousands of dollars for accommodation, for the mere love of intrigue, without the expectation of any benefit? There being

no necessity for such a contract we can not believe that appellee or any reasonable man would embark in it and take such risks for mere accommodation, and, what is most serious, run the risk of having the corn taken to pay Todd & Terrell's debts, having the money borrowed with which to purchase the corn, to be paid by himself, which would be the result if this corn is taken by appellant.

All parties who had anything to do with the purchase of the contracts and agreement between Todd & Terrell and appellee, testify that the contract was *bona fide*, and, under the circumstances, what could the jury do other than to believe the appellee's witnesses and return a verdict for appellee. We think the evidence very decidedly preponderates in favor of appellee.

We see no error in the exclusion of the evidence offered of George M. Hollenback. The relation of client and attorney existed between him and Terrell, and appellee was not present; as against him it would not have been competent in any event.

Seeing no error and being fully satisfied of the justice of the verdict the judgment is affirmed.

Affirmed.

Dissenting opinion by BAKER, J.

In my opinion the judgment should be reversed. I think the decided weight of the evidence is to the effect that J. S. Budd, who filed the interpleader, was the bailee of Jacob Budd, his father, and as between themselves Jacob Budd was the real owner. In that state of the case the statements and admissions of Jacob Budd, in evidence, tending to prove fraud, should not have been excluded from the jury by the instructions of the court. I also think there were other errors in excluding testimony. Under the rulings of the court the issue was not fairly submitted to the jury. I think, however, the title and possession of J. S. Budd as bailee, if not fraudulent, would be sufficient for the maintenance of his interpleader.